# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LARRY COLLINS,** | : | Civil No. 3:12-CV-2244 |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **B.A. BLEDSOE, et al.,** | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

This is a civil action brought by Larry Collins, an inmate in the custody of the Federal Bureau of Prisons, currently incarcerated in the Special Management Unit (SMU) at the United States Penitentiary, Lewisburg (USP-Lewisburg). Collins initiated this <u>Bivens</u>[1] action on November 9, 2012, asserting a number of constitutional claims arising out of incidents alleged to have occurred at USP-Lewisburg between May 3, 2011, and May 5, 2011. Collins brought claims against 14 staff members at USP-Lewisburg, alleging that they used excessive force against him and were deliberately indifferent to his health and safety during the course of a

---

[1] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

use of force while removing from a bus, during a forced cell move, and through the use of ambulatory restraints. Collins also claims that the defendants falsified restraint check forms, medical records, and incident reports relating to these alleged events. (Doc. 1, Compl.) On September 30, 2014, the Court dismissed Collins's claims for specific monetary damages and declaratory relief, as well as claims he had brought for verbal harassment, conspiracy, and filing false reports to cover up alleged constitutional violations, as well as claims for money damages brought with respect to Incident Report No. 2158647. (Doc. 71.) What remains in this case are Collins's claims for excessive force, unlawful conditions of confinement, and denial of medical care.

Now pending before the Court is Collins's motion to compel the defendants to produce additional responses to discovery requests that he propounded. The defendants have responded to these requests, by producing some documents and materials that are responsive, some of which have been redacted for privacy or security concerns; and in some cases, objecting to the requests as irrelevant, overly broad, or otherwise infringing upon valid penological interests. Asserting that their production in response to Collins's requests has been adequate and in accordance with the Federal Rules of Civil Procedure, and that their objections to certain aspects of Collins's requests are justified, the defendants oppose the motion.

Collins filed a brief in support of his motion, and another brief purportedly to oppose the defendants' brief responding to the motion to compel. However, in his briefs, Collins fails to respond in any persuasive fashion to the defendants' assertions regarding the adequacy of their production or the merits of their objections to further disclosure. Instead, he has stated a general objection to the defendants' invocation of privilege, but has otherwise merely restated his discovery requests, and demanded further responses.

For the following reasons, upon consideration of Collins's requests, the production made in response, and the tailored and discrete objections lodged, we find that the motion to compel must be denied in most respects. Out of an abundance of caution, we will direct the defendants to undertake a further review of their records to determine whether potentially responsive documents to a properly narrowed request may be identified, as we explain further below.

## II. BACKGROUND

Collins has served numerous discovery requests upon the defendants, and as the documents attached to the parties' attest, the defendants have responded with responses and objections. On January 16, 2015, Collins filed a motion to compel further production based on his attempts to resolve objections that he sent to the defendants' counsel on or around January 2, 2015. (Doc. 91.) In the motion, Collins

seeks entry of an order compelling discovery from defendants Hudson, Fleming, R. Johnson, T. Johnson, R. Casilla, C. Lytle, G. Gaston, S. Prutzman and K. Gemberling. (Id.) In the motion, Collins simply restates the requests that Collins had submitted to the defendants, and does not explain what about the defendant's objections Collins believes is improper. Indeed, Collins's brief does not actually identify or even discuss the specific requests that he provided to the defendants. (Doc. 92.) Instead, he offers a very general and, as it turns out, inaccurate claim that the defendants had objected to further production on the basis of privilege. (Id.)

Collins's letter to defendants' counsel is marginally more helpful. In it, he complains that some of the materials that he was provided were not sufficiently responsive to his requests, and he complains that some of the materials were redacted, although it is not clear why he believes the redaction is problematic. He further attempts to clarify some of his requests. (Doc. 91, at 8.) In all other respects, the letter recasts Collins's requests that were propounded previously, but fails to explain why the responses were insufficient. Collins also did not attempt to narrow or limit the scope of his requests.

In his subsequent motion and brief, (Doc. 108.), Collins focuses on interrogatories that he sent seeking responses from defendant Hicks.[2] This motion is also filled largely with generalities, and the defendants have responded in order to explain the answers that were provided in response to the questions posed in the interrogatories, and to explain why no further responses are possible. (Doc. 111.)

## III. <u>DISCUSSION</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines both the scope and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(c).

---

[2] The Court construed Hicks's second motion to compel further responses to interrogatories issued to defendant Hicks as a combined motion to compel and brief in support, and we consider it together with Collins's prior motion to compel the defendants to produce additional documents. (Doc. 91.)

Fed. R. Civ. P. 26(b)(1). Collins's motion, and the defendants' response in opposition to this motion, call upon the Court to exercise its authority under Rule 26 of the Federal Rules of Civil procedure to regulate discovery in this case. Issues relating to the scope of discovery permitted under the Rules rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense". Therefore, valid claims of privilege still cabin and restrict the Court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information," a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Applying these benchmark standards, we now turn to the motion before the Court, and the discovery requests to which it relates, beginning with the document requests.

**A.     Document Requests**

Collins has requested "A copy of the Z-Block Log Book at USP Lewisburg recorded on May 3rd and 4th, 2011." (Doc. 103, Ex. 1, Def. Hudson's Resps. and Objs. to Pl.'s First Request for Production of Documents at 3.)  These documents were produced. (Id., at 3, Attach A (Bates Nos. DEF-00001 to DEF-000012).) There appears to be nothing further to produce, and Collins has not explained how this response was in any was deficient.  In his second request, Collins seeks "A copy of D-Block Log Book at USP Lewisburg record on May 4, 2011."  This document was also produced. (Id., at 3, Attach. B (Bates Nos. DEF-00013 to DEF-000018).)  These two documents were redacted in order to safeguard the privacy rights of other inmates at USP-Lewisburg, and Collins has not explained how this redaction is improper, and we do not find it to have been.

Collins also seems to be attempting to amend his discovery request through subsequent letters to the defendants' counsel. (Doc. 91, at 8.) Thus, Collins stated that he was seeking production of log books with staff signatures so he could determine which staff members entered the units in question.  The defendants

7

provided Collins with the staff roster, which identified all staff members who had been assigned to the cell blocks on May 3 and May 4, 2011. (Doc. 103, Ex. 1 at 3, Attach C (Bates Nos. DEF-000019 to DEF-000034).) The defendants also provided Collins with documents called "Unit Sign-in Logs" for both D- and Z-Blocks for May 1, 2011 through May 7, 2011. (Id., Ex. 2, Supp. Discovery Resp. (Bates Nos. DEF-000261 to DEF-000266).)

In Collins's third request, he sought, any and all documents showing who was on duty in D-Block at 8:00 a.m. until 4:00 p.m. at USP Lewisburg on May 4, 2011. (Doc. 103, Ex.1, at 3.) The fourth request seeks the same information for Z-Block on May 3 and May 4, 2011. (Id., at 4.) In response the defendants produced the Daily Assignment Roster for USP-Lewisburg for each of these consecutive days. (Id., Attach. C (Bates Nos. DEF-00019 to DEF-000034).) The defendants redacted each of the rosters to reveal only the names of those staff members who were assigned to D- and Z-Blocks, where Collins was confined, since the defendants maintain that the identities of all other staff at the prison on those dates would be irrelevant to his claims even under the broad relevance standard prescribed by Rule 26, and because to provide such unlimited information Collins would present security concerns. We find nothing improper about the defendants' production of these documents, or in the tailored manner in which they were limited.

8

Collins also complains that the defendants failed to respond sufficiently with respect to document requests relating to defendant Fleming, who has since retired from the Bureau of Prisons. In the plaintiff's first request to this defendant, he asked for any and all instructions, notes reports, memoranda, and internal communications concerning plaintiff's ability or inability to walk prior to and including the dates of May 3rd and 4th of 2011. (Doc. 103, Ex. 3, at 3.) The defendants objected to the request on the grounds of relevance, vagueness, and overbreadth, but responded nevertheless to provide medical records that were readily available through the BOP's computerized system of medical records, and notified Collins that the response would be supplemented if paper medical records were obtained. The defendants also objected to the production of records from before December 6, 2006, on the grounds that records from before this point were so far removed as to be irrelevant to the claims in this case. (Id., Attach A (Bates Nos. DEF-000110-000173).)

Collins next requested production of "Any and all instructions, notes, reports, memoranda, and internal communications concerning plaintiff's being a violent prisoner against staff starting with the date he was brought into the Federal Bureau of Prisons back in 1977 to May 3, 2011 and May 4, 2011." The defendants objected to this request, again on grounds of relevance, vagueness and overbreadth, but nevertheless produced over 80 pages of materials relevant to this response pertaining

9

to Collins's history as a violent inmate. (Doc. 103, Ex. 3, Attach. B (Bates Nos. DEF-000174 to DEF-000260).)

In his letter to defendants' counsel, Collins sought to clarify these requests, stating that he wished to know the information that may have been provided specifically to defendant Fleming concerning his inability to walk, and his history of violence as an inmate in the federal prison system, during the relevant time periods he identified. (Doc. 91, at 8.) The defendants have responded by noting that all of the information that is in the custody of the BOP is contained within Collins's Central File, to which defendant Fleming would have had access during his employment, although it is difficult if not impossible to know which, if any, documents Fleming may have actually examined during that time. Thus, having clarified the documents, their location, and the fact that Fleming would have had access to them, the defendants have not produced additional materials in response to the requests, and have represented that they are unable to do so.

In all other respects, Collins's letter to counsel simply restates his requests with regard to those requests directed specifically to Fleming. (Doc. 91, at 2, 9.) In this regard, Collins seeks entry of an order compelling Fleming to produce:

    c.    Any and all documents, grievances, complaints received by defendant B.A. Bledsoe or his agents at USP Lewisburg concerning the

mistreatment of inmates by defendant Fleming, and any memoranda, investigative files, or other documents created in response to such complaints since January 1, 2005. (Request No. 3 to Fleming.)

d. Any and all reports, notes, grievances, complaints, or other documents relating to the death of an inmate at USP Lewisburg, be it suicide or otherwise, where defendant Fleming was directly involved or his named was mentioned during his tenure at USP Lewisburg and entire employment with the Federal Bureau of Prisons. (Request No. 4 to Fleming.)

e. Any and all reports, documents notes of the number of "forced cell moves" made by defendant Fleming during his tenure at USP Lewisburg. (Request No. 5 to Fleming.)

Although Collins suggests that the defendants objected on the basis of privilege, this is incorrect. The defendants instead objected to the nature, scope and relevance of the requests. (Doc. 103, Ex. 3, at 4-5.) With respect to Request No. 3, which concerned complaints that may have been directed to Warden Bledsoe regarding Fleming's alleged mistreatment of inmates between January 2005 and May 5, 2011, the defendants objected by asserting that the request was overly broad and unduly burdensome. The defendants also asserted that thousands of grievances are

filed annually, and it would accordingly be burdensome or impossible to search all of them for a particular staff member. (Id.) We agree with this, but nevertheless find that a narrower request could potentially be relevant, and could be undertaken without undue burden.

In some circumstances inmates may be entitled to discover information of similar past practices or alleged conduct, or that is calculated to show a habit or routine on the part of corrections defendants, see, e.g., Frails v. City of New York, 236 F.R.D. 116, 117-18 (E.D.N.Y. 2006) (collecting cases). However, we are also mindful that, as the Court in Frails recognized, "[u]nsubstantiated allegations of misconduct that are unrelated to the claims raised in this case are not relevant to plaintiff's [ ] claim." Id. at 118. To date, the defendants have not opposed Collins's request on relevancy grounds, but have instead merely claimed without sufficient explanation that it would be impossible to identify any potentially responsive materials within their possession. Mindful that discovery of the type requested in Request No. 3 may potentially be relevant to the plaintiff's claims in this case, and out of an abundance of caution, the Court will direct the defendants to undertake a narrower review of BOP records to determine whether there exist documents indicating any agency finding of actual misconduct on Fleming's part.

We agree with the defendants, and with the court in <u>Frails</u>, that mere unsubstantiated allegations of misconduct have no relevance to Collins's claims. However, if Fleming's employee file contains any actual findings of misconduct that could come within the scope of Collins's discovery request, those documents could be relevant and might be subject to production. Accordingly, the defendants shall be directed to undertake a review of BOP records to determine whether any documents in Fleming's employee file indicate an actual finding of misconduct on his part, and any potentially responsive documents identified through this review shall be provided to the Court *in camera* within 30 days from the date of this decision so that a determination may be made about whether they should be produced to Collins.

Regarding Request No. 4, which concerned documents relating in any way to any inmate death at USP-Lewisburg where Fleming's name was mentioned or in which he was "directly involved," the defendants asserted that the request was not relevant to Collins's claims and, in any event, would be extremely burdensome to answer since defendant Fleming worked in a variety of BOP institutions over a 20-year career. We agree with the defendants, particularly regarding the lack of apparent relevance to Collins's own claims. We cannot perceive how seeking documents bearing defendant Fleming's name relating in some way to other inmate deaths within USP-Lewisburg or other BOP facilities is relevant to the remaining claims in this

case, and find no basis to compel further response to this request, or to put the defendants to the burden of attempting to identify whether any such documents exist given the lack of relevancy to this case. Moreover, we have already directed that the defendants undertake review of Fleming's file for documents evidencing actual findings of misconduct, if any, which would likely encompass any potentially responsive and relevant documents relating to this request.

Finally, the defendants objected to Request No. 5, which seeks information regarding the number of forced cell moves that defendant Fleming made during this time as an officer at USP-Lewisburg. The defendants cast the request as vague and overly broad, and maintained that it would be unduly burdensome to respond, apparently because to determine whether Fleming had participated in every forced cell move would necessitate review of more than 1,000 reportable incidents, which itself may also insufficiently state Fleming's involvement in other, unreported matters. We agree that mere information regarding forced cell moves in which Fleming may have had involvement during his tenure at USP-Lewisburg is overly broad and has little apparent relevance that would justify requiring defendants' counsel to undertake such a review. Moreover, as we previously noted, mere allegations of misconduct regarding defendant Fleming or any other defendant would not have sufficient relevance to the claims in this case that would justify ordering

production. Instead, the Court expects that any documents that are potentially responsive to this request, and appropriately narrowed, would be uncovered during the search we will order to determine whether Fleming's employee file contains findings of actual misconduct on his part.

Collins has also propounded discovery requests on defendants R. Johnson and T. Johnson seeking, without any limitation, discovery materials pertaining to all two-hour restraint checks, and concerning all grievances or complaints that have been made by inmates regarding these defendants' alleged mistreatment of them during their entire employment with the BOP. (Doc. 91, at 2-3, 9.) The defendants objected that the requests were irrelevant, vague, and burdensome because the requests were not limited temporally, and were not designed to obtain potentially relevant information with respect to Collins's remaining claims. (Doc. 103, Ex. 4, Defs' Objs. to Pl.'s First Request for Production of Documents to Defs. R. Johnson and T. Johnson.) Collins has undertaken no effort to narrow his claims. However, consistent with the manner in which we narrowed the discovery requests propounded upon defendant Fleming, we will direct the defendants to undertake a review of BOP records to determine whether any documents exist that indicate any actual findings of misconduct on the part of either defendant R. Johnson or T. Johnson, and to submit these results to the Court for *in camera* inspection within 30 days.

Next Collins has sought to compel defendants Casilla, Lytle and Gaston to provide "[a]ny and all FIFTEEN MINUTE RESTRAINT CHECK documents" written by any of these defendants during their "tenure at USP Lewisburg and entire employment with the BOP," as well as "any and all grievances, complaints, or other documents created by the mistreatment of inmates" during the defendants' employment. (Doc. 103, Ex. 5, Defs.' Objs. to Pl.'s First Request for Production of Documents to Defs. R. Casilla, C. Lytle and B. Gaston.) The defendants objected that the document request is unreasonably overbroad and is not designed to obtain relevant evidence. Collins has taken no steps to clarify or narrow this request, and we find no basis to compel further response, particularly in light of Collins's failure to address the defects that are manifest in this overly broad request.

Collins also seeks an order compelling defendants Prutzman and Gemberling to produce grievances or other documents relating to the mistreatment of inmates, or to the death of inmates, that name either defendant between January 1, 2005, to May 5, 2011. (Doc. 91, at 4-5.) The defendants objected to the request on the grounds that it is overbroad, and burdensome. However, the defendants also affirmatively represented to Collins that neither defendant Gemberling nor Prutzman have sustained any misconduct findings concerning their treatment of inmates. Given this representation, and because we find no basis to compel the defendants to produce any

grievances or other complaints from inmates that are nothing more than allegations or assertions in other contexts, we find there is no need to compel further response or further efforts to discover potentially responsive documents.

   B.   **Interrogatories**

In addition to the document requests discussed above, Collins has also moved for entry of an order compelling defendant Hicks to respond more fully to a first set of interrogatories that Collins propounded. (Doc. 108.) Collins specifically seeks to be provided with more information concerning the order that led to him being moved to a different cell on May 4, 2011, and to be placed in ambulatory restraints. (Doc. 108, at 5.) Although Collins restates his interrogatories and Hicks's answers and objections to them, Collins does not explain why the answers or objections were improper or inadequate.

Thus, in Interrogatory No. 1, Collins asked defendant Hicks to "Name the higher ranking person who ordered you to move the plaintiff from Z-Block to D-Block on May 4, 2011." (Doc. 111, Ex. 1, Def. Hicks's Ans. and Obj. to Pl's. First Set of Interrogatories, at 3.) Defendant Hicks responded that he lacked sufficient knowledge or information to answer, because he could not remember the name of the officer who have him the order. Collins has not challenged this response in any meaningful way, and we find no basis to compel defendant Hicks to do anything more

17

than he has done by answering the question to state that he lacks knowledge of who gave the order.

Interrogatory No. 2 asked, "At what time on May 4, 2011, did the higher-ranking official order you to make the move?" (Id., at 3.) Hicks objected to the interrogatory on the basis of relevance, but stated that it would have been before 1:40 p.m., which was the time indicated on Incident Report No. 2158647. Hicks lacked personal recall of the exact time, and thus provided an answer that appears to have been informed by a written incident report that was prepared shortly after the incident in question. We find no reason to require further response than the one Hicks has given.

In Interrogatory No. 3, Collins asks in an inquiring manner, "Why was the cell move so important?" (Id., at 4.) It is difficult to perceive how Hicks should have answered this question in any event, but he nevertheless informed Collins that he lacked sufficient personal knowledge since he could not remember if he was given a reason for the move, and he represented that it was unlikely he would have been given a reason. There is no basis to compel further response.

Interrogatory No. 4 asks, "If the cell move had not been made, would the plaintiff remaining in the cell he was in and the unit he was in on May 4, 2011 been a threat to security, prison staff or any other inmates?" (Id.) Hicks responded that he

lacked knowledge to answer, which is entirely consistent with Hicks's representation that he did not even know the reason for the cell move in the first place. There is nothing further that is required with respect to this interrogatory.

Interrogatory No. 5 asks, "If there was an existing threat before the plaintiff was approached and told he was going to be moved to D-Block, then explain exactly what that threat consisted of on the date of May 4, 2011." (Id.) Again, Hicks has represented that he lacks personal knowledge to answer this question, and since he did not know the reason for the cell move, it is hardly surprising that Hicks could not provide a more detailed answer to this specific question.

Finally, in Interrogatory No. 6, Collins asked, "Did you take it upon yourself to move the plaintiff on May 4, 2011 without any higher-ranking authorization?" (Id., at 5.) Defendant Hicks answered, "No." (Id.) Again, we find no reason to compel a further answer here, since Hicks's answer is complete and responsive.

As noted, Collins has taken no steps to clarify or explain what about defendant Hicks's answers he found problematic or lacking. Collins may be dissatisfied with Hicks's answers, but he has made no showing to suggest that the answers were untruthful or that they omitted information of which Hicks knew. There is simply no substance to Collins's motion, and there is nothing to be gained by compelling Hicks to provide any further answers than those he has given to date, which essentially

represented that he lacked sufficient personal knowledge to answer the questions that Collins had posed. Even if there were any basis for the Court to grant Collins's motion – and we find none – an order granting the motion would not cause Hicks's answers to change, as he has stated in his brief. According, the motion to compel defendant Hicks to provide more fulsome answers to interrogatories will be denied.

## IV. <u>ORDER</u>

Accordingly, for the foregoing reasons, the plaintiff's motions to compel further responses to document requests (Doc. 91.) is GRANTED in part and DENIED in part. The defendants shall undertake further review of BOP records to determine whether any potentially responsive documents exist that indicate actual findings of misconduct on the part of defendant Fleming, R. Johnson, or T. Johnson relating to the treatment of inmates. If any such documents exist, the defendants shall provide them to the Court *in camera* within 30 days of the date of this order so that a determination can be made as to whether they should be produced in whole or in part to Collins. In all other respects, the motion is DENIED.

In addition, Collins's motion to compel defendant Hicks to provide further answers to interrogatories (Doc. 108.) is DENIED in its entirety.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: October 7, 2015