## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LARRY JOE COLLINS,

               Plaintiff,

    v.

WARDEN B. A. BLEDSOE, et al.,

               Defendants.

CIVIL ACTION NO. 3:12-CV-02244

(CONNER, C.J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

Before the Court are two motions for summary judgment: the first filed by 14 Defendants affiliated with USP-Lewisburg, seeking dismissal of all remaining claims against them; and the second a partial motion for summary judgment filed by *pro se* Plaintiff Larry Joe Collins, alleging judgment on claims of Eighth Amendment excessive force, deliberate indifference, conditions of confinement, denial of medical care, and on the issue of qualified immunity. (Doc. 140; Doc. 151). Pursuant to the rationale articulated below, the undersigned recommends that all claims and Defendants should be dismissed, except for claims of excessive force against Defendants Fleming, Gemberling, and Prutzman for Collins' removal from the bus and incident in the medical unit, and a claim of failure to intervene against Defendant Hudson for the incident in the medical unit.

I.    **B**ACKGROUND[1]

The events causing this complaint take place in the first week of May, 2011, when Collins first arrived at USP-Lewisburg.

On May 3, 2011, Collins arrived at Lewisburg by bus to begin a term of incarceration at the Prison. (Doc. 16, ¶ 19). Defendants Fleming,[2] Prutzman, Gemberling, and four unnamed correctional officers (hereinafter, "c/o's") ordered Collins to "get up and walk off the bus." (Doc. 16, ¶ 19). Collins states that in response he advised the Defendants that due to a medical condition he had been loaded onto the bus via wheelchair and would require assistance disembarking and entering Lewisburg. (Doc. 16, ¶ 19). The Defendants threatened Collins, who reiterated his inability to walk without assistance, before dragging Collins off the bus "in a violent manner." (Doc. 16, ¶ 20).

Collins was transported to Lewisburg's hospital for intake x-rays, which were not performed. (Doc. 16, ¶ 21). Instead, Collins' restraints were replaced by SMU-handcuffs and Collins was dragged off the x-ray table onto the floor, with Defendant Fleming ordering Defendants Gemberling and Prutzman to "hurt him." (Doc. 16, ¶ 21). Gemberling and Prutzman complied, each putting their full body weight on Collins and pinning him to the floor on his back with Collins' hands cuffed underneath his spine. (Doc. 16, ¶ 21). The c/o's maintained this position for five minutes while Collins "screamed out in pain." (Doc. 16, ¶ 22).

---

[1] The facts contained in this description are presented as provided in Collins' amended complaint, with omission of facts relating to claims dismissed previously. (Doc. 16).

[2] Though the case caption and complaint identify Lt. "Flemming," subsequent briefing and discovery appears to clarify the Defendant's last name as "Fleming." Thus, the Court uses the corrected spelling in this Report and Recommendation.

During this ordeal, Defendant Hudson, supervisor of Fleming, Gemberling, and Prutzman, entered the room and "simply stood off to the side and observed what was being done." (Doc. 16, ¶ 24).

Officers then transported Collins to Z-Block, placing Collins on the floor of his cell before departing. (Doc. 16, ¶ 25). Collins was never provided a mattress despite requesting one, and spent the night on the floor. (Doc. 16, ¶ 25).

On May 4, 2011, Defendant Fleming returned to Collins' cell to transport him to a different cell on D-Block that would allow Collins to plug in his C-Pap machine. (Doc. 16, ¶ 27). Collins informed Fleming that "for ten years" Collins had been cuffed with his hands in front of his body because of a bulging disc in his back, while Collins offered his hands through the food slot of his door while on his knees. (Doc. 16, ¶ 27). Fleming demanded Collins stand up, turn around, and offer his hands in a manner allowing Collins to be cuffed with his hands behind his back. (Doc. 16, ¶ 27). Collins told Fleming he could not stand due to his medical condition. (Doc. 16, ¶ 27).

After verbal threats, Collins informed Fleming that he would waive the ability to use his C-Pap machine if it meant not having to change cells. (Doc. 16, ¶ 29). Fleming left, returning with a "team" and again ordered Collins to offer his hands to be cuffed behind his back. (Doc. 16, ¶ 31). Collins offered his hands the same way as before. (Doc. 16, ¶ 32). Fleming then pepper-sprayed Collins in the face and ordered compliance. (Doc. 16, ¶ 32). Collins removed his hands and crawled to the sink in his cell, attempting to wash the pepper spray from his face. (Doc. 16, ¶ 33). Staff "shot [Collins] in the back of his left thigh with a rubber bullet" and continued to pepper spray his back prompting Collins to return his hand through the food slot to be cuffed. (Doc. 16, ¶ 33). After Collins did not comply, Fleming ordered the door open and

staff took Collins to another room, running water over his face to rinse off the pepper spray. (Doc. 16, ¶¶ 34-35). Collins states that while some of the spray was rinsed off his face, the rest of his body was "completely wet and saturated with the burning agent." (Doc. 16, ¶ 36). The officers changed Collins' clothes and placed him in restraints "cutting deep into the skin." (Doc. 16, ¶ 37).

Collins was placed in the cell in D-Block. He contends that, as a result of the pepper spray coating his body, he spent the next 17 hours experiencing burning sensations strong enough that he could not help but scream in pain. (Doc. 16, ¶ 41). As a result of his cries, inmates approached Defendant Gaston, asking that Gaston check on Collins. (Doc. 16, ¶ 42). Gaston threatened inmates who made light of Collins' pleas with a similar punishment. (Doc. 16, ¶ 42). Lt. R. Johnson and physician's assistant George entered Collins' cell, checked the restraints, and declined to assist Collins despite his vocalization that the pepper spray was "burning [him] up." (Doc. 16, ¶ 43).

Later, Defendant Casilla[3] appeared and asked Collins if Collins intended to eat dinner that evening. (Doc. 16, ¶ 45). Collins said he intended to but could not as a result of the restraints. (Doc. 16, ¶ 45). Casilla informed Collins that if Collins could not eat while in the restraints, he would be marked as refusing to eat. (Doc. 16, ¶ 45). Collins states Casillo ignored the torturous conditions that Collins was experiencing being covered in mace and in overly tight restraints. (Doc. 16, ¶ 45).

---

[3] The complaint identifies Defendant "Casillo." However, like with Defendant Fleming, Casilla's name has been amended.

The next morning, May 5, 2011, Defendant Lytle repeated Castillo's course of conduct when time for breakfast came around. (Doc. 16, ¶ 45). Lytle and Defendant T. Johnson refused Collins access to a toilet. (Doc. 16, ¶ 45). Collins remained in restraints, forced to "defecate and urinate on himself . . ." until the restraints were removed, after which he was prevented from cleaning himself "for more than 24 hours." (Doc. 16, ¶ 47).

Collins states that as a result of this course of events, he experienced damage to his spine, high stress, high blood pressure, heart damage, muscle atrophy due to his need for a wheelchair afterwards, PTSD, suicidal tendencies, and anxiety and stress. (Doc. 16, ¶ 55-61).

## II.    PROCEDURAL HISTORY

On November 9, 2012, Collins filed the instant lawsuit, seeking redress from Warden Bledsoe, Associate Warden Hudson, Lieutenants Fleming, R. Johnson, and T. Johnson, c/o's Prutzman, Gemberling, Casillo, Lytle, Hicks, clinical director Pigos, physician's assistant George, and EMT-P Walls. (Doc. 1). Following the filing and briefing of a motion to dismiss and the filing of an amended complaint, the Court declined to dismiss Collins' Eighth Amendment claims and ordered the Defendants to answer the amended complaint. Collins' claims for verbal harassment, conspiracy, and filing of false reports in connection with these acts were dismissed.. (Doc. 9; Doc. 11; Doc. 14; Doc. 22; Doc. 34; Doc. 53, at 63; Doc. 70; Doc. 71).

On October 14, 2014, the Defendants filed their answer as ordered. (Doc. 72). The parties engaged in lengthy discovery, requiring Court intervention on numerous occasions. On January 23, 2017, the Defendants filed their motion for summary judgment. (Doc. 140; Doc. 147). Therein they argue that Collins has not established personal involvement by Warden Bledsoe sufficient for liability to attach, that Collins has failed to state a claim for excessive

force or deliberate indifference, and that all of the Defendants are entitled to qualified immunity protection. (Doc. 147).

Collins filed his own motion for partial summary judgment on April 7, 2017. (Doc. 151; Doc. 156). In support, he states that Defendant Bledsoe is "affirmatively linked" as supervisor to the perpetrators of the harm he suffered, that he has stated claims against each of the Defendants for excessive force and deliberate indifference, and that qualified immunity cannot shield Defendants R. Johnson, T. Johnson, and Lytle due to the "malicious and sadistic intent" they displayed. (Doc. 156, at 22).

Both parties filed their respective briefs in opposition, reiterating their respective stances on the issues.[4] The Defendants have also timely filed a reply to Collins' brief in opposition. (Doc. 175). Collins has not filed a reply brief, now 30 days after docketing of the Defendants' brief in opposition. Thus, the timeframe outlined by the Local Rules for doing so has long passed. Accordingly, the Court considers both motions ripe for review.

III.   **STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment

---

[4] Plaintiff brief in opposition – Doc. 172; Defendants' brief in opposition – Doc. 178.

motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

IV. **DISCUSSION**

As succinctly stated in *Zimmerman v. Schaeffer*:

> [t]he Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials. U.S. CONST. AMEND. VIII; *see also Rhodes v. Chapman,* 452 U.S. 337, 345–46 (1981); *Whitley v. Albers,* 475 U.S. 312, 319 (1986). The Eighth Amendment both restrains prison officials from applying excessive force against inmates, *see Hudson v. McMillian,* 503 U.S. 1, 5 (1992), and it imposes affirmative duties on prison officials to provide humane conditions of confinement, *see Farmer v. Brennan,* 511 U.S. 825, 832–33 (1994).

654 F.Supp.2d 226, 247 (M.D. Pa. 2009).

As a preliminary matter, the Defendants assert that Collins has failed to present any evidence to defeat summary judgment, stating Collins' lone piece of submitted evidentiary support is his signed declaration.[5] (Doc. 178, at 10). In fact, Collins has filed two declarations, the second of which contains numerous affidavits by inmates from USP-Terre Haute and USP-Florence, each attesting that they have never seen Collins without a wheelchair and do not believe he is able to walk. (Doc. 158). While the Defendants argue Collins' declaration is insufficient to defeat summary judgment, Collins' declaration is considerable as evidence in limited circumstances. *See Brooks v. Kyler*, 204 F.3d 102, 108 n. 7 (3d Cir. 2000) (Courts considering the extent of injury in determining whether force used was excessive against a prisoner proceeding *pro se* may rely on the prisoner's statement at the summary judgment stage, as the prisoner is "in a decidedly difficult position from which to generate 'record evidence' on his behalf ... [u]nder these circumstances, his affidavits ... are about the best that can be expected from him [at the summary judgment phase of] the proceedings.").

### A. COLLINS HAS NOT ESTABLISHED PERSONAL INVOLVEMENT BY WARDEN B.A. BLEDSOE

A *Bivens* civil rights action brought pursuant to § 1331 is held to the same standards as a complaint brought under 42 U.S.C. § 1983. *Bivens* operates as the authority for a plaintiff to pursue § 1983 relief, but against federal officials. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). It is well established that a municipal or federal official sued in a § 1983 action "may not be held liable for the unconstitutional conduct of their

_____

[5] (Doc. 152).

subordinates under a theory of *respondeat superior*." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

The totality of Warden Bledsoe's involvement, generously interpreting Collins' complaint, falls well short of the level required for culpability. The Court agrees with the rationale outlined in Judge Blewitt's Report and Recommendation dated March 7, 2014. (Doc. 53). While determined to be premature at the time, the circumstances leading to Judge Blewitt's recommendation to grant summary judgment in favor of Defendant Bledsoe have not changed following the conduction of discovery.

More specifically, Collins' complaint appears devoid of references to Bledsoe's relation to these claims until paragraph 54 of the amended complaint, where Collins states "Defendant Bledsoe is connected with the violation of the plaintiff's Eighth Amendment Constitutional rights through 'GUILTY-KNOWLEDGE' and further he showed deliberate indifference to his suffering throughout the torture . . ." (Doc. 16, ¶ 54). In his brief in opposition to summary judgment, Collins asserts Bledsoe gave permission to Defendant Fleming to torture Collins if he did not get up and walk off the arriving bus upon demand. (Doc. 172, at 10). Collins goes on to offer that Fleming had a propensity for excessive force, as demonstrated by an incident three years prior, and that Bledsoe granted permission to use chemical agents and excessively tight

restraints for the purpose of torture. (Doc. 172, at 11). As noted by the Defendants, Collins has not asserted the Bledsoe was present for any of the acts in question.

The tenuous accusations levied against Bledsoe fail in two respects. First, Collins' assertions that Bledsoe permitted Fleming to take specific actions on May 3 are facts contrary to those contained in his amended complaint, in addition to being unsupported by evidence. Collins has not presented any support for the contention that Bledsoe authorized torture upon Collins' arrival. Collins states that when the bus arrived, officers ordered Collins to walk, whereupon Collins stated that he could not. (Doc. 16, ¶ 19). As alleged, after a brief exchange between Collins and the officers present, prison officials transported Collins off the bus and to the medical unit, proceeding to torture him. (Doc. 16, ¶ 19-21). At no point is Bledsoe mentioned, nor is it alleged that Bledsoe was even informed of the situation. Thus, Collins contentions are devoid of any support linking Warden Bledsoe to the actions of corrections officers during Collins' initial entry into the Prison.

Likewise, Collins has not alleged that Bledsoe participated in the subsequent violations identified in the complaint. In his brief in support, Collins argues that Bledsoe authorized excessive use of force by allowing Fleming to carry pepper spray and authorized Collins' placement in "excessively tight hard restraints for the purpose of torture," among others. (Doc. 172, at 10-11). None of these actions are contrary to Prison policies established by the Board of Prisons, and Collins has not provided any evidence to support the contention that Bledsoe authorized actions impeding on Collins' constitutional rights. The use of pepper spray does not inherently infringe upon constitutional rights, and Collins has not established that Bledsoe had knowledge of or control over any excessive use of the chemical. Further, the allegations on subsequent violations—excessively tight restraints for a long period of time, denying food and

water for the duration, denying toilet access, and denying medical treatment—are all belied by Collins own assertions that various prison officials checked on him and participated in these violations, however at no point does Collins offer evidence that Bledsoe was aware of or involved in any constitutional deprivations.

Accordingly, the Court recommends that Collins' has not established personal involvement on the part of Warden Bledsoe. Thus, claims against Bledsoe should be **DISMISSED**. Collins' partial motion for summary judgment on this issue should be **DENIED**, and the Defendants' motion for summary judgment **GRANTED**.

B. MATERIAL FACTUAL DISPUTES REMAIN ON COLLINS' CLAIMS FOR EXCESSIVE FORCE, HOWEVER CLAIMS RELATING TO THE MAY 4, 2011 CELL EXTRACTION ARE BARRED BY *HECK V. HUMPHREY*

Collins alleges that some of the Defendants used excessive force over the course of conduct stated above. Repeated as succinctly as possible, Collins states Defendants Fleming, Gemberling, and Prutzman used excessive force on May 3, 2011 in removing Collins from the bus and in the medical unit when they pinned him to the floor and inflicted pain without justification. (Doc. 16, ¶ 21). Collins states that on May 4, 2011, Fleming used excessive force during the cell extraction by unnecessarily using pepper spray and pepperballs despite Collins attempted compliance with orders. (Doc. 16, ¶ 32-33).

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). After incarceration, the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). "The relevant inquiry in evaluating a claim of excessive force

by prison guards is whether the force was applied in good faith to maintain or restore discipline, or instead sadistically or maliciously to cause harm." *Zimmerman v. Schaeffer*, 654 F.Supp.2d 226, 247 (M.D. Pa. 2009) (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). The sadistic or malicious infliction of harm, serving no penological purpose, would constitute cruel and unusual punishment. *See Farmer*, 511 U.S. at 832 ("in its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners.") (citing *Hudson*, 503 U.S. 1).

The Supreme Court identified the factors considered in determining the reasonability of a prison official's application of force as "the relationship between the need and amount of force that was used, and the extent of injury inflicted." *Whitley*, 475 U.S. at 321. The Court further recognized that "[f]rom such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. Lastly, the Court articulated as equally relevant "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321. Deference is given to prison officials' adoption of policies to restore order and discipline. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

"Summary judgement in favor of a defendant is not appropriate if it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Zimmerman v. Schaeffer*, 654 F.Supp.2d 226, 247 (M.D. Pa. 2009) (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)). Accepting Collins' assertions as fact, plainly a claim for excessive force has been made out. The Defendants assert that the

force used was necessary as Collins was non-compliant, as well as being within BOP policy limits. (Doc. 147, at 17).

In Collins' statement of disputed factual issues, he states that material factual dispute still exists on these issues. (Doc. 157). Of note, he points out that disputes exist on: whether he offered resistance or disobedience before the extraction, whether he posed a threat necessitating the use of restraints, and whether the conduct of these Defendants was intended to "restore discipline or maliciously and sadistically to cause harm." (Doc. 157, at 2). At this stage, the Court is to view the evidence—such as Collins' declaration and supporting affidavits by fellow inmates—and facts in the light most favorable to the plaintiff. Collins further asserts that the video capturing the cell extraction on May 4, 2011 will corroborate his claims. If true, Collins assertions that he was not resisting or disobeying orders would tend to show that use of pepper spray and force during the extraction was unnecessary.

This Court previously held that Collins' claims that would necessarily question the validity of the infraction report must be dismissed as not cognizable under § 1983. (Doc. 70; Doc. 71). Thus, the Court is precluded from considering Collins' claims relating to the May 4, 2011 cell extraction. Even were the Court to consider Collins' declaration as evidence, it is the only evidence he has proffered in support of his claims on these events. In his declaration, Collins stands firm on his contention that he was compliant and that force was unnecessary. However, the Court cannot credit this evidence under *Heck*, as it calls into question the validity

of the incident report dated June 29, 2011, which already found Collins guilty of non-compliance.[6]

That said, a ruling finding excessive force was used during the May 3 removal from the bus and incident in the medical unit does not call into question the incident report that precludes review of the claims relating to the cell extraction. Most importantly though, Collins' declaration does not appear to be the only evidence supporting his contentions. An intra-system transfer report dated April 29, 2011—days before Collins' arrival to Lewisburg—indicates that Collins uses eye glasses, a wheelchair, and a C-Pap machine. (Doc. 148-13, at 32). As the entirety of the May 3rd incident begins with Collins' assertion to Defendants Fleming, Gemberling, and Prutzman that he required a wheelchair to disembark the bus, this transfer report appears to corroborate his statement and contradict the Defendants' position that Collins could walk on his own. If Collins indeed required a wheelchair, then the use of force in his removal may be considered excessive. Further, the subsequent infliction of pain in the medical unit without justification also implicates constitutional concerns which remain unresolved by evidence. Plainly, unresolved disputes remain on the use of force against Collins on May 3 in removing him from the bus and in the medical unit and, if so, whether force was used appropriately or maliciously.

Whether the force used during both incidents was necessary is a question of fact that cannot be resolved at the current time. However, claims of excessive force relating to the May

---

[6] As Collins' sole allegations against Defendant Hicks also center upon the circumstances leading to the incident report, the Court recommends that Defendant Hicks be **DISMISSED** from this case.

4, 2011 cell extraction are unreviewable in the instant proceedings. Accordingly, the Court recommends that the Defendants' motion for summary judgment for dismissal of claims of excessive force against Defendants Fleming, Gemberling, and Prutzman be **GRANTED IN PART** and **DENIED IN PART**. The Defendants' motion should be granted on claims relating to the May 4, 2011 cell extraction, and denied on claims relating to the May 3, 2011 intake and incident in the medical unit. As a result, the Court also recommends that Collins' motion on these issues be **DENIED** in its entirety. Collins has not produced evidence to survive summary judgment on the May 4 incident and material factual disputes still exist as to the May 3 incident.

C. COLLINS HAS FAILED TO PRODUCE EVIDENCE ESTABLISHING GENUINE ISSUES IN DISPUTE ON CLAIMS OF DELIBERATE INDIFFERENCE

Next, the Defendants argue that summary judgment should be granted on Collins' claims for deliberate indifference, as the identified Defendants were not deliberately indifferent or were entitled to rely on the assessments of medical officials, and that Collins has produced no evidence to refute their own. (Doc. 147, at 35). Collins' claims for deliberate indifference center upon his post-cell extraction placement in restraints for over a day,[7] officials' indifference to Collins "burning" from pepper spray residue during this period, his inability to eat, drink, or

---

[7] As the use of ambulatory restraints appears inseparable from the use of force during the cell extraction, the Court does not consider their use in evaluating Collins' claims of deliberate indifference. *See Zimmerman v. Schaeffer*, 654 F.Supp.2d 226, 249 (M.D. Pa. 2009) ("[T]he court finds that Plaintiffs' claims regarding the application of mechanical restraints are most appropriately viewed as excessive force, because the application of the mechanical restraints in each case is closely connected to the use of force in initially subduing Plaintiffs in each incident, and in all cases, a lengthy application of mechanical restraints was authorized in advance.")

use the bathroom, and officials' denial of meals. (Doc. 16). As with the above claims, Collins relies on his declaration to support his claims and survive summary judgment upon them.

The standards for deliberate indifference on Collins' claims fall under two categories: conditions of confinement and deliberate indifference to serious medical needs.

The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). In the most general sense, a plaintiff must demonstrate that they have been denied "the minimal civilized measure of life's necessities." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d. Cir. 1997) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)). "This includes proving that the deprivation suffered was sufficiently serious, and that a prison official acted with deliberate indifference in subjecting him to that deprivation." *Griffin*, 112 F.3d at 709 (citing *Young*, 960 F.2d at 361). The duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes v. Chapman*, 452 U.S. 337, 362-363 (1981).

In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The critical inquiry is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a plaintiff must establish a subjective state of mind. *See Farmer*, 511 U.S. at 838.

Collins asserts that Defendants Casilla, Gaston, Lytle, T. Johnson, and R. Johnson ignored his pleas to loosen the restraints in order to permit Collins to drink or use the toilet.

(Doc. 16, 45-47). The inability to drink or use the toilet could reasonably be expected to jeopardize the health and safety of an inmate. The Defendants assert that the restraints are designed specifically to allow for these accommodations, and further that log books indicate Collins continued "yelling, cursing . . ., standing, sitting on the toilet and flooding his cell, pacing, and laying or sitting on his bunk," indicating a far less restrictive state than alleged. (Doc. 147, at 38). Completed restraint check logs corroborate this. (Doc. 148-13, at 65-66, 68). Collins declaration is insufficient to create a triable issue of fact where he has not produced evidence to refute these logs.

Further, Collins assertions that these Defendants, along with Defendants Pigos, George, and Walls, denied him medical care in refusing to address the burning he felt from the aftereffects of pepper spray are belied by evidence. The Defendants have provided documentation reflecting medical evaluations by George, Walls, and non-party William Brennemen (whose reports are cosigned by Pigos), each of whom evaluated Collins while he remained in restraints. (Doc. 148-13, at 42-48). Each of the reports present determinations of no significant findings or distress, absent minor swelling in Collins' hands. Later assessments reflect that restraints were loosened. (Doc. 148-13, at 47). Walls' report reflects Collins complaining of burning, to which Walls advised Collins how to alleviate the burning, but stated that Collins declined. (Doc. 148-13, at 42). Collins has provided no evidence to the contrary except to reiterate these are lies.[8]

_____

[8] The District Court previously dismissed all claims founded upon Collins' assertions that these reports were falsified in part of a conspiracy to commit the harms alleged. (Doc. 71).

These reports also bely Collins' contentions of inadequate medical care. Corrections officers are entitled to rely on the judgment of medical officials, absent some reason to suspect that these medical officials are mistreating or not addressing obvious medical needs. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Plainly, there can be no dispute that medical officials evaluated Collins throughout his restraint. (Doc. 148-13, at 42-48). Collins has not provided any support to permit this Court to find that corrections officers had reason to question the judgment of the medical officials.

Thus, the Defendants have produced evidence belying Collins' claims that he was denied medical care during this ordeal, and Collins has not met his own burden. As a result, the Court recommends that the Defendants motion to for summary judgment on claims of deliberate indifference to serious medical needs should be **GRANTED**. Conversely, Collins' motion for summary judgment on these claims must be **DENIED**.

Deliberate indifference on the part of Defendant Hudson for failure to intervene meanwhile must be evaluated separately. Collins' allegation is that Defendant Hudson stood by while Defendants Fleming, Gemberling, and Prutzman used excessive force on May 3. As noted above, Collins' claim of excessive force relating to this incident should be permitted to proceed. The Defendants argue that there is no evidence that Hudson was present at the time of the incident and that in any event he is entitled to qualified immunity, a contention discussed separately.

It is well established that a corrections officer's failure to intervene in an inmate's beating can be the basis of liability in an Eighth Amendment claim under § 1983, or in this case *Bivens*. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). In *Smith*, the Third Circuit made it clear that the standards for reviewing a claim against a corrections officer are the same as one

brought against a police officer. *Smith*, 293 F.3d at 651. Then detailing the considerations, the Court found liability may attach where an "officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence" so long as the officer has "a realistic and reasonable opportunity to intervene." *Smith*, 293 F.3d at 650.

While the Defendants argue that there is no evidence that Hudson was present at the time of the incident, the converse is also true. There is no evidence that Hudson was not present at the time of the incident either. Rule 56 of the Federal Rules of Civil Procedure does not mandate that a moving party support its motion by producing evidence negating a party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the impetus remains on the moving party to demonstrate there is no genuine issue of triable fact. The issue of whether or not Defendant Hudson was present and did not act remains unsupported by either party at this juncture, and accordingly the Court recommends that summary judgment for either party on claims against him would be inappropriate. Collins has plainly articulated a factual scenario where Hudson observed and failed to stop the unnecessary infliction of pain with no penological purpose. Absent evidence to the contrary, this claim should proceed.

The Court thus recommends that the Defendants motion for summary judgment on claims against Defendant Hudson for failure to intervene be **DENIED**. As issues of triable fact remain, the Court likewise recommends that Collins motion for summary judgment on the same be **DENIED**.

### D. QUALIFIED IMMUNITY

The Defendants assert that each of them is entitled to summary judgment because they are shielded from individual liability because on the basis of qualified immunity. Qualified

19

immunity provides not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Specifically, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). An official who reasonably believes his conduct to be lawful is thus protected, as qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Supreme Court has noted that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 563 U.S. at 735.

"A right is 'clearly established' if a reasonable actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates." *Broadwater v. Fow*, 945 F.Supp.2d 574, 585 (M.D. Pa. 2013). A right may be clearly established without "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Furthermore, the Third Circuit has noted that "[i]f the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211–12 n.4 (3d Cir. 2001). "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012); *see also al–Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define

clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix v. Luna*, ––– U.S. –––, 136 S.Ct. 305, 308 (2015) (per curiam) (*quoting al–Kidd*, 131 S.Ct. at 2084).

Of course, a court ruling on a motion for summary judgment must view the facts in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). "In qualified immunity cases, this usually means adopting the plaintiff's version of the facts." *Scott, 550 U.S. at 378*. The issue of qualified immunity is generally a question of law, although a genuine issue of material fact will preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (citing *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 192 (3d Cir.1984); *Czurlanis v. Albanese,* 721 F.2d 98, 108 n. 8 (3d Cir.1983)). Having already found genuine issues of material fact preclude resolution of the matter at the summary judgment stage, the Court thus cannot determine that the remaining Defendants are entitled to qualified immunity. Thus, the Court recommends that the Defendants motion for summary judgment on the issue of qualified immunity should be **DENIED**. As a result, the Court also recommends that Collins' motion for summary judgment declaring qualified immunity unavailable to be likewise **DENIED**.

## V.    RECOMMENDATION

Based on the foregoing, the Court recommends that the Defendants motion for summary judgment be **GRANTED IN PART** AND **DENIED IN PART**, and Plaintiff's partial motion for summary judgment be **DENIED**. The Court recommends that all claims and

Defendants be **DISMISSED**, save claims for excessive force by Defendants Fleming, Gemberling, and Prutzman on May 3, 2011, and a failure to intervene claim against Defendant Hudson for his role on May 3, 2011. Specifically, the Court recommends that:

1. The Defendants' motion for summary judgment be **GRANTED** as to claims against Defendant Warden B.A. Bledsoe, as Plaintiff has failed to establish personal involvement necessary in a *Bivens* action;

2. Plaintiff's motion for summary judgment on the same be **DENIED**;

3. The Defendants' motion for summary judgment on claims of excessive force by Defendants Fleming, Gemberling, and Prutzman for the events occurring on May 3, 2011 be **DENIED**, as genuine factual disputes remain;

4. Plaintiff's motion for summary judgment on the same be **DENIED**;

5. The Defendants' motion for summary judgment on claims of excessive force for the events on May 4, 2011 be **GRANTED**, as consideration of such is barred by *Heck v. Humphrey*;

6. Plaintiff's motion for summary judgment on the same be **DENIED**;

7. The Defendant's motion for summary judgment on claims of deliberate indifference by Defendants R. Johnson, T. Johnson, Casilla, Lytle, Gaston, Pigos, George, and Walls should be **GRANTED**, as Plaintiff has failed to produce evidence to establish a genuine issue of triable fact;

8. Plaintiff's motion for summary judgment on the same be **DENIED**;

9. Claims against Defendant Hudson for failure to intervene should proceed, as a genuine factual dispute remains;

10. That the Defendants' motion for summary judgment on the issue of qualified immunity be **DENIED**; and,

11. Plaintiff's motion for summary judgment on the same be **DENIED**.

Dated: August 14, 2017

*s/ Karoline Mehalchick*
_____
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

22

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LARRY JOE COLLINS,

              Plaintiff,

    v.

WARDEN B.A. BLEDSOE, et al.,

              Defendants

CIVIL ACTION NO. 3:12-CV-02244

(CONNER, C.J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 14, 2017**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: August 14, 2017**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**